UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY L. KINARD,
#157033,

    Plaintiff,                                  Civil Action No. 16-CV-13469

vs.                                          HON. BERNARD A. FRIEDMAN

A. VALONE,

    Defendant.
_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is presently before the Court on defendant's motion for summary judgment [docket entry 43]. Plaintiff has filed a response in opposition. Magistrate Judge Elizabeth A. Stafford has issued a Report and Recommendation ("R&R") in which she recommends that the Court deny defendant's motion. Neither party has objected to the R&R and the time for them to do so has expired. Pursuant to Fed. R. Civ. P. 72(b)(3), for the following reasons the Court shall reject the magistrate judge's recommendation and grant defendant's motion.

This is a prisoner civil rights case. The Court previously summarized plaintiff's allegations as follows:

> When he filed his complaint, plaintiff was incarcerated at the Thumb Correctional Facility in Lapeer, Michigan where defendant A. Valone ("defendant") is or was the librarian.
> The complaint alleges that, on April 27, 2016, plaintiff was on his way to the prison law library to do legal research when a prisoner named Joey Allen asked plaintiff to hand a

> photocopy disbursement form to the library clerk. Allen wrote something on the form and handed it to plaintiff, who apparently submitted the form to defendant. Defendant subsequently filed two misconduct reports, which charged plaintiff with possession of a forged document. Defendant also discontinued plaintiff's library privileges for approximately two and a half weeks pending a hearing on the misconduct reports.
>
> One of the misconduct reports was withdrawn because it was a duplicate, and on May 9, 2016, a correctional official held a hearing on the remaining report. The hearing officer compared the writing on the photocopy disbursement form to Allen's handwriting and determined that Allen, not plaintiff, filled out the form. Accordingly, the hearing officer found plaintiff not guilty of the charge. Plaintiff had filed a grievance against defendant, claiming that defendant violated his constitutional rights under the Fourteenth Amendment. Plaintiff also asserted that defendant was corrupt and that his conduct was unbecoming of a correctional employee. Because plaintiff was found not guilty, the grievances were deemed resolved and his library privileges restored.

Order of Dismissal at 1-2. In Count One, plaintiff claimed defendant violated his "First Amendment Right to Access The Courts and not to be removed from the law library in retaliation for exercising my constitutional rights to use of the law library." Compl. ¶ 40. In Counts Two through Five plaintiff asserted claims under the Fourteenth Amendment and the Michigan Constitution for due process violations and unequal treatment.

The Court dismissed all of plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), and plaintiff appealed. The Sixth Circuit affirmed except as to plaintiff's retaliation claim, and it remanded for further proceedings as to that claim. *See Kinard v. Valone*, No. 17-1224 (6th Cir. Apr. 12, 2018).

Defendant now seeks summary judgment on the grounds that plaintiff failed

to exhaust his remedies under the prison grievance system. Defendant correctly notes that the exhaustion of such remedies is a prerequisite to filing suit. As this Court recently stated,

> [t]he Prison Litigation Reform Act ("PLRA") requires that a prisoner must exhaust all administrative remedies before filing a Section 1983 action. 42 U.S.C. § 1997e(a). Proper exhaustion requires a prison to "compl[y] with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The MDOC has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).

*Bennett v. Winn*, No. 17-12249, 2018 WL 3853601, at *3 (E.D. Mich. Aug. 14, 2018). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Plaintiff was required to comply with MDOC Policy Directive 03.02.130 ("Prisoner/Parolee Grievances"), a copy of which is attached to defendant's motion as Exhibit A. Under the procedures outlined therein, an aggrieved inmate must "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue." *Id.* ¶ P. If the issue is not resolved, the inmate may file a Step

3

I grievance "[w]ithin five business days after attempting to resolve a grievable issue with staff." *Id.* ¶ V. In a Step I grievance, "[t]he issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* ¶ R (emphasis in original). If the inmate is dissatisfied with the response at Step I, he may file a Step II grievance "within ten business days after receiving the Step I response." *Id.* ¶ BB. If the inmate is dissatisfied with the response at Step II, he may file a Step III grievance "within ten business days after receiving the Step II response or . . . within ten business days after the date the response was due." *Id.* ¶ FF.

Plaintiff filed two grievances regarding his difficulties with access to the law library. The first, whose identification number ends in 14-E, and is dated April 30, 2016, states:

> Mr. T. Valone provided me with a callout offender schedule for the full month of April with dates and times for both Law Library and Electrict Law Library (ELL). On both April 29th & 30th by this provided schedule and dates and times I should have received an itinerary for both dates, and also for the month of May 2016 as I wrote a kite to Mr. Valone requesting monthly callout. Mr. Valone has removed me from the call out knowing that I need the time to research by both books and ELL as I have 2 cases pending which I represent myself . . . . Mr. Valone's actions violate PD-03.03.130 and PD-05.03.116 to fair and just treatment and law library access. Mr. Valone has treated me different than other prisoners who are afforded Law Library. Since arrival at TCF Mr. Valone has provided me with a schedule for Law Library an Itinerary now as of 4/29/16 none. Requesting to be placed on call out.

4

Def.'s Ex. B, PageID 234. In response, on May 23, 2016, resident unit manager Hohn wrote that Valone had temporarily barred plaintiff from the law library pending a hearing on the misconduct ticket concerning the Joey Allen incident, but that the "misconduct written by librarian Valone was dismissed and [plaintiff] has since then regained access to the law library and ELL." *Id.* PageID 235.

> On June 5, 2016, at Step II, plaintiff wrote:
>
> Due Process requires that I be afforded Notice of being Temporarily Barred from law library. NOI or Other which that was not done. Same test and to add in this step-2, On 5/22/16 I made a request for the month of June 2016 and again with malicious intent I have not been placed on call out since 5/27/16. Ante! I will again re-alleged the step-1 allegations and say that the actions of Mr. Valone are adverse, clear and outright unfair and theres not any reason or bad actions on my part, to be treated in such an unfair manner than other prisoners who are receiving law library. The misconduct has no reason here.

*Id.* PageID 237. As there was no response at Step II, plaintiff stated at Step III on June 29, 2016:

> There was no Due Process afforded but evil intentions placed up me for no reason other than hate or dislike for prisoners exhibited by the respondents named who answered the grievances. These blanket policies and procedures are used throughout the MDOC Prisons all over the State to cause harm to Prisoners like me, and the Director, Warden's [illegible] such practice widely used and allow the same with no corrective action.

*Id.* (emphasis in original).

Meanwhile, on May 10, 2016, plaintiff filed a second Step I grievance whose identification number ends in 17-A, in which he stated:

5

> This complaint is against Librarian T. Valone for staff corruption and conduct unbecoming of a MDOC employee. Lt. Henderson called me to control center to hearing for a class-2 misconduct report written by T. Valone April 27, 2016 at 11:30 a.m. claiming that . . . "I visually saw Kinard fill out the disbursement i.e., form CSJ-602 Legal Photocopy disbursement, and sign Allen's #212613 name/number lock" etc... This misconduct was falsified, fabricated, concocted intentionally to cause me to be denied parole, elevate my point level, security classification to higher level also my caricature, reputation as one who falsified & forges others names, documents as for criminal use. And violation of PD 03.03.130 to fair and just treatment which I have been treated unfair by the acts of T. Valone. I am in fear of T. Valone my now have other staff write me false misconducts in retaliation, since he has many officers/staff willing to do his bidding. Lt. Henderson properly investigated the allegations of the false written class-2 misconduct and found me not guilty . . . . With the attached evidence which the warden should take corrective action of such conduct and a full investigation as T. Valone will use his union to sheild him from these false misconduct 4/27/16 form CSJ-228 written by T. Valone.

Def.'s Ex. C, PageID 240.

In response, on May 27, 2016, resident unit manager Hohn again indicated, as he had in response to plaintiff's earlier grievance, that the "misconduct written by librarian Valone was dismissed and [plaintiff] has since then regained access to the law library and ELL." *Id.*, PageID 241.

On June 5, 2016, at Step II, plaintiff wrote:

> The falsified, fabricated, perjured writen misconduct report can never be resolved as M. Hohn attempts to seek shelter behind some policy or procedure he/she thinks it is ok for A. Valone to outright lie in writing on me for no reason is malicious intent and a violation of my 14th Amendment Constitutional Rights Pyle v. Kansas, 317 U.S. 213 . . . . Mr. Valone's conduct is

6

> beyond the MDOC's Duties and the step-1 respondent is no better. I'm sure the Attorney General and Federal Judge will take matters on another level.

*Id.,* Page ID 243. And finally, on June 29, 2016, at Step III, plaintiff wrote:

> The MDOC makes & encourages the employees to write fabricated, false, perjured misconduct reports. This is a blanket policy that is widely used throughout the MDOC. This procedure is allowed for staff to be used as a form of corpral punishment in which wardens, deputies & supervisors at the levels of chain of command to effectuate such <u>evil</u>-ness out of hatered with no discipline action to the employee or staff.

*Id* (emphasis in original).

As is apparent from a review of plaintiff's two grievances, plaintiff never made the allegation he seeks to raise in the instant complaint, namely, that defendant denied him access to the law library in retaliation for plaintiff having engaged in protected activity. In the 14-E grievance, at Step I, plaintiff complained that defendant had not put him on a callout schedule, that defendant knew plaintiff was working on two pending cases, and that this treatment was "different than other prisoners" received.[1] At Step II, plaintiff's focus was on the lack of notice and on the unfairness of being treated differently than other prisoners. At Step III, plaintiff again mentioned the lack of due process, but he redirected attention to those "who answered the grievances" (i.e., resident unit manager Hohn and deputy warden Greason, who signed as Hohn's reviewer), as well as the warden and the MDOC director.

---

[1] The Court dismissed plaintiff's "unequal treatment" claim, *see* Order of Dismissal at 6-7, and the court of appeals affirmed that ruling. *See Kinard v. Valone*, No. 17-1224, at 3 (6th Cir. Apr. 12, 2018).

In the 17-A grievance, plaintiff complained that defendant had filed a false misconduct charge against him to harm his parole chances and to increase his security classification, but not in retaliation for plaintiff having engaged in any protected activity, e.g., using the law library or doing research for his cases.[2] Likewise at Steps II and III of this grievance, plaintiff complained about the false misconduct report being issued "for no reason" and the complicity of others in condoning "a blanket policy that is widely used throughout the MDOC."

By failing to allege in either grievance that defendant retaliated against him for having engaged in protected conduct, plaintiff failed to exhaust his grievance remedies prior to asserting such a claim in this Court. In short, while plaintiff complained that defendant treated him unfairly, and differently than other inmates, and without proper notice, he never claimed that defendant did so to retaliate against him for using the library or engaging in other protected conduct. Plaintiff therefore deprived the MDOC of the opportunity to investigate this issue and, if found to have merit, to take corrective action on its own. This is one of the primary purposes of the exhaustion requirement, and one of the reasons why the Supreme Court has strictly enforced compliance with the requirement as codified in 42 U.S.C. § 1997e(a). *See Woodford*, 548 U.S. at 88-89; *Porter v. Nussle*, 534 U.S. 516, 528-31 (2002). The Court concludes that plaintiff failed to properly exhaust his administrative

---

[2] The word "retaliation" does appear in this grievance, but not in any way relevant to the instant case. Plaintiff wrote that he believed defendant might "now have other staff write me false misconducts in retaliation," but whatever plaintiff believed may occur in the future is not a basis for a grievance or a lawsuit.

remedies regarding his retaliation claim, and respectfully disagrees with the magistrate judge's contrary conclusion. Accordingly,

> IT IS ORDERED that Magistrate Judge Stafford's R&R is rejected.

> IT IS FURTHER ORDERED that defendant's motion for summary judgment is granted.

Dated: June 10, 2019
    Detroit, Michigan

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 10, 2019.

**Anthony Kinard,157033**
**4514 Magnolia Ave. S.W.**
**Wyoming, MI 49548**

s/Johnetta M. Curry-Williams
Case Manager